IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Crim. Case No. 5:21-CR-00389-M
Civ. Case No. 5:25-CV-00105-M

ERIC WERNER JOHANSSON,

    Petitioner,

v.                                                                                    ORDER

UNITED STATES OF AMERICA,

    Respondent.

On July 29, 2022, the court sentenced Petitioner to a 150-month term of incarceration following Petitioner's guilty plea to three charges for the transportation and possession of child pornography. Pending before the court are Petitioner's Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct that sentence, DE 50, and the United States' Motion to Dismiss, DE 54. For the reasons set out below, the United States' Motion is GRANTED, and Petitioner's Petition is DISMISSED.

## I. Abbreviated Factual History

Beginning in 2017, the Department of Homeland Security ("DHS") investigated a series of dark web chat rooms dedicated to the use and distribution of Child Pornography ("CP"). DE 25 ¶ 7. While monitoring these chatroom, DHS agents observed a user, later revealed to be Petitioner, post several links to third-party webpages which the agents confirmed as containing CP. DE 25 ¶¶ 7–9. After tracing the posting user's IP address to Petitioner's residence, on November 4, 2020, DHS agents executed a search warrant at Petitioner's residence. DE 25 ¶ 10. Pursuant to the search warrant, DHS agents seized several hard drives and computers found at

Petitioner's residence. DE 25 ¶ 10. A later forensic evaluation of those devices revealed 1,412 images and 34 videos containing CP. DE 25 ¶ 11. Those images and videos portrayed minors who had not attained the age of 12, contained sadistic or masochistic conduct, and included the sexual abuse of an infant or toddler. DE 25 ¶ 12.

A federal grand jury sitting in the Eastern District of North Carolina returned a three-count indictment which charged Petitioner with two counts of transportation of child pornography and one count of possession of child pornography. DE 1. Petitioner pled guilty to the charges in the Indictment without a plea agreement. DE 20.

At Petitioner's arraignment, the court advised Petitioner of his right to plead not guilty, to have a jury trial, and of the rights he would have at any trial. DE 43 at 3–4. The court further informed Petitioner that by pleading guilty, he would waive his right to a jury trial and be sentenced based only on his plea. DE 43 at 4–5. After placing Petitioner under oath, the court discussed Petitioner's relationship with his court-appointed attorney, and Petitioner confirmed that he "had an adequate opportunity to discuss the indictment and [his] case with [his] lawyer," that he had "had all the conversations with [his lawyer] that [he] need[ed]," and that Petitioner was "fully satisfied with [his] lawyer's legal services. DE 43 at 4–5. Petitioner then pleaded guilty to all three counts, affirmed that he had done what was charged in all three counts, and confirmed that he was guilty as charged on all three counts. DE 43 at 20–22. Petitioner further confirmed that he did not "disagree with any of the facts . . . presented by the Assistant United States Attorney," in the factual proffer. DE 43 at 25.

At his sentencing, the court calculated Petitioner's guidelines imprisonment range; based on an offense level of 34 and a criminal history category of II, the guidelines provided for an imprisonment range of 168 to 210 months. DE 44 at 13. That calculation included a four-level

2

enhancement because the offense involved material portraying both sadistic or masochistic conduct and the sexual abuse or exploitation of an infant. DE 25 at 52. However, as the court explained at sentencing, it was wary of that enhancement's outsized effect, especially because "it does not appear that that was the focus of [Petitioner's] conduct." DE 44 at 51. In light of that caution and its further concerns that a lower criminal history category might more appropriately have captured Petitioner's criminal history, the court downwardly varied to an imprisonment range based on a criminal history category of one. DE 44 at 50. The court then sentenced Petitioner to the bottom of that varied range, imposing a 150-month term of imprisonment and a 20-year term of supervised release. DE 44 at 52.

Petitioner appealed his conviction to argue that the court "erred by failing to provide appropriate reasoning for the lengthy term of supervised release." DE 46 at 2. In particular, Petitioner argued that, because the court had (apparently) accepted his argument for a below-guidelines term of imprisonment, it was inappropriate for the court to still impose a lengthy term of supervised release without first addressing why that term remained appropriate in light of its reasons for a below-guidelines term of imprisonment. DE 46 at 2–3. The Fourth Circuit rejected Petitioner's arguments and affirmed the court's sentence. DE 46.

Petitioner did not petition the Supreme Court for a writ of certiorari to review the Fourth Circuit's decision. 458 days, or about fifteen months, after the deadline to seek such a writ passed, Petitioner filed the instant Petition under 28 U.S.C. § 2255. Liberally construed, the Petition asserts that his trial counsel provided ineffective assistance by

- Not investigating charges or arrest
- Not investigating validity of warrants
- Not addressing alleged *Miranda* violations
- Not filing pretrial motions
- Not filing motion to suppress statements where Petitioner was not advised of *Miranda* rights

3

- Not ordering full mental health evaluation
- Not providing zealous representation

*See generally* DE 50. The United States, in response, moved to dismiss the Petition because it "is time barred, [the within] claims are procedurally defaulted, and [the] claims fail on the merits." DE 55 at 6. Petitioner responded to the United States' Motion in opposition. DE 61. As such, the matter is ripe for consideration.

## II. Legal Standards

"A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court 'to vacate, set aside, or correct his sentence' pursuant to 28 U.S.C. § 2255." *Umar v. United States*, 161 F.Supp.3d 366, 373 (E.D. Va. 2015) (quoting § 2255(a)). "A 1-year period of limitation shall apply to a motion under this section." 28 U.S.C. § 2255(f). "The limitation period shall run from . . . the date on which the judgment of conviction becomes final." *Id.* § (f)(1). Assuming a timely petition, such relief is appropriate when:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). The petitioner has the burden "to establish by a preponderance of the evidence" the purported basis for relief. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

The United States may respond to a Section 2255 motion by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009).

4

However, the scope of a court's review for a motion to dismiss a habeas petition is broader than the typical civil context because the court may also consider the record from the petitioner's underlying conviction and any exhibits attached to the petition. *See id.* at 139; *McCollough v. Bragg*, No. 5:20-CV-138, 2021 WL 236079, at *3 (D.S.C. Jan. 25, 2021); 28 U.S.C. § 2255(b) (instructing court to review "the files and records of the case").

### III. Discussion

Petitioner concedes that his petition is untimely. DE 50 at 11. Petitioner's judgment became final on November 24, 2023, which is 90 days after the entry of the Fourth Circuit judgment affirming Petitioner's conviction. *See Clay v. United States*, 537 U.S. 522, 525, 527-28 (2003) (noting that defendants have 90 days from the entry of the appellate judgment to petition for a writ of certiorari from the Supreme Court). Thus, Petitioner's deadline to file a § 2255 motion was November 24, 2024. Petitioner did not file his motion until February 24, 2025, three months after the deadline to file. Petitioner nonetheless contends that his Petition should be allowed under the doctrine of equitable tolling.

"[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). "Equitable tolling is appropriate when, but only when, extraordinary circumstances beyond the petitioner's control prevented him from complying with the statutory time limit." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citation omitted) (internal quotations omitted) (cleaned up). "Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that

5

prevented him from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citation omitted) (internal quotations omitted).

Because an attorney acts as his client's agent, "counsel's errors are attributable to [the client]," regardless of whether the client "participated in, ratified, or condoned [counsel's] decisions." *Rouse*, 339 F.3d at 249. "Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause." *Maples v. Thomas*, 565 U.S. 266, 281 (2012). In other words, an attorney's actions are rarely "external to [the client's] conduct," and will seldom offer the basis for equitable tolling. *See Sosa*, 363 F.3d at 512. An apparent exception is definitional; an attorney's conduct will be external to their client's when the attorney is no longer acting as the client's attorney, such as when an attorney has "abandoned" his client, which the Supreme Court has noted may be "evidenced by [a] near-total failure to communicate . . . or to respond . . . . over a period of several years." *See, e.g., Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito, J., concurring).

Moreover, a *pro se* petitioner's mistakes will seldom offer sufficient reason to merit equitable tolling. It is well established, for example, that "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999); *see also Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) ("Smith's *pro se* status until March 1997 does not merit equitable tolling."); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) ("It is apparent that Mr. Miller simply did not know about the limitation in the AEDPA until it was too late.").

In his initial Petition, Petitioner argues that equitable tolling is appropriate given the alleged failures of retained counsel to timely file the Petition or communicate with Petitioner prior to the expiration of the statute of limitations.

6

Initially [Petitioner] hired an attorney, with a $2,000 fee to review the case for any potential to attack his conviction or sentence via a§ 2255 Motion. Attorney Jeremy Gordon of Mansfield, Texas reached out to [Petitioner] to offer his services on August 23, 2023. Subsequently a[] contractual agreement was entered into in February of 2024. Gordon was to keep [Petitioner] informed of his progress, instead he did not answer calls[] or communicate with Movant. On November 20, 2024[,] he sent a letter saying he could not recommend further representation. This letter was received after the statute of limitations had expired. This attorney's gross misconduct and negligence amounted to failure to satisfy professional standards of care. The result is a fundamental miscarriage of justice as [Petitioner] merits would result in his going to trial, or at the very least[] viable arguments that would have resulted in fewer enhancements reducing [Petitioner's] sentencing exposure by years.

DE 50 at 12. In Petitioner's response to the United States' Motion, he provides further details for those allegations. *See generally* DE 61.

The exhibits attached to the Petition tend to demonstrate the following regarding Petitioner's alleged attorney-client relationship with Mr. Gordon. On August 28, 2023, Mr. Gordon mailed Petitioner what appears to be a form advertisement; that letter indicates that Mr. Gordon "review[ed] the opinion page[s]" of various courts of appeals and encountered the Fourth Circuit's affirmation of Petitioner's conviction. *See* DE 61-9. Mr. Gordon's further letter explained that, despite the loss on appeal, "other legal avenues may be available to attack [Petitioner's] conviction:" namely a petition for a writ of certiorari or a petition under 28 U.S.C. § 2255. DE 61-9. In a letter dated January 5, 2024, Mr. Gordon mailed Petitioner a contract between the two parties; it indicates that Petitioner, for $2,000, retained Mr. Gordon to conduct a "case review," after which Mr. Gordon would provide Petitioner a "memorandum detailing [Mr. Gordon's] case review findings." DE 61-9 at 2. Petitioner explicitly did not retain Mr. Gordon for the purposes of preparing, filing, or litigating a petition under 28 U.S.C. § 2255. *See* DE 61-9 at 2. In a memorandum dated November 20, 2024, Mr. Gordon advised petitioner, because "[t]he information as it was presented in the plea transcript on your case is dam[n]ing[,] . . . . I do not see

7

any viable claims to go forward with." *See* DE 61-10 at 5. The memorandum further advised Petitioner of the deadline to file any petition under 28 U.S.C. § 2255—though Petitioner explains he did not receive the memorandum until November 26, 2024, and did not otherwise know of the filing deadline. *See* DE 61 at 17.

Thus, Petitioner's argument essentially boils down to the following. Petitioner hired Mr. Gordon to perform a "case review" to result in Mr. Gordon preparing a memorandum containing his professional opinion as to the merits of any collateral attack on Petitioner's conviction. Mr. Gordon then functionally "abandoned" Petitioner by allegedly not communicating and, five days before the deadline for any petition under 28 U.S.C. § 2255, mailing Petitioner a memorandum advising that no valid avenues to relief existed. As such, Petitioner contends he is entitled to equitable tolling. *See* DE 61 at 15–19, 23–25.

He is not. Based on the documents submitted by Petitioner, it appears that Petitioner retained Mr. Gordon to review Petitioner's case and advise Petitioner on the merits of any post-conviction relief. From that point, Mr. Gordon's actions were no longer "external" to Petitioner. *See Sosa*, 363 F.3d at 512. Indeed, because "[u]nder our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent," *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 92 (1990) (cleaned up), and "under well-settled principles of agency law, the principal bears the risk of negligent conduct on the part of his agent," *Maples*, 565 U.S. at 280–81 (cleaned up), Mr. Gordon's actions legally became Petitioner's actions, *see also Holland*, 560 U.S. at 664 (Scalia, J., dissenting) ("Because the attorney is the litigant's agent, the attorney's acts (or failures to act) within the scope of the representation are treated as those of his client . . . .") (citation omitted). In other words, *Petitioner* spent six months conducting a case review. Any resulting delay is appropriately attributable to Petitioner and, therefore, not a reason to justify equitable

8

tolling. Likewise, Mr. Gordon's decision to mail Petitioner the memorandum a mere five days before any petition was due, though imprudent, "does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." *See Harris*, 209 F.3d at 331.

Likewise, Petitioner's contentions that Mr. Gordon abandoned him lack merit. Petitioner alleges that Mr. Gordon abandoned him by "rejecting [Petitioner's] calls and failing to respond to written communication for a four[-]month period," presumably the four-month period prior to Mr. Gordon's sending of the memorandum. DE 61 at 23. To support his theory of abandonment, Petitioner further contends that Mr. Gordon "commit[ed] . . . to file the § 2255 motion," after "confidently and optimistically stat[ing] that there were 'good and viable claims.'" DE 61 at 23. The court has received no evidence other than Petitioner's bare allegations concerning communication with Mr. Gordon other than the letters attached to Petitioner's response. Petitioner has not, for example, provided call logs indicating the alleged rejections or copies of the alleged written communication to which Petitioner did not receive a response. As such, the court will exercise caution in considering Petitioner's allegations regarding the quality of Mr. Gordon's representation.

However, and regardless of that caution, Mr. Gordon did not abandon Petitioner. Petitioner evidently retained Mr. Gordon to review Petitioner's case and provide a memorandum with Mr. Gordon's recommendations; Mr. Gordon did exactly that. *Contra Maples*, 565 U.S. at 270 (discussing "an Alabama capital prisoner sentenced to death," whose New York attorneys— *without informing their client or the trial court*—accepted new employment which prohibited them from representing the petitioner, thus causing the petitioner to miss his habeas deadline). And even if Mr. Gordon did express optimism about Petitioner's chances of success in a post-conviction

9

motion, that misplaced confidence is neither an extraordinary reason for equitable tolling nor indicative of later abandonment. *See Harrington v. Richter*, 562 U.S. 86, 110 (2011) ("Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight."); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[A] mere inaccurate prediction, standing alone, would not constitute ineffective assistance [of counsel].").

Because this case presents no "extraordinary circumstances beyond the petitioner's control [which] prevented him from complying with the statutory time limit," the court finds that equitable tolling is inappropriate. *See Rouse*, 339 F.3d at 246. And beyond equitable tolling, "[n]either § 2255(f) nor any other federal statute or rule authorizes a court to extend a filing limitation period set by Congress through enactment of a statute." *United States v. Jones*, 2010 WL 1959461, at *4 (W.D. Va. 2010). The Petition is thus untimely and must be dismissed.

Even if equitable tolling were applicable in this matter, the court would still dismiss the Petition because its claims are procedurally defaulted and would fail on the merits. Regarding procedural default, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Petitioner filed a direct appeal but merely challenged the procedural reasonableness of his term of supervised release; every claim in the Petition has, thus, been raised for the first time. *See* DE 46. Petitioner can show neither cause nor prejudice because the arguments in the Petition were available to Petitioner at the time of his defense and appeal; moreover, petitioner cannot show that he is "actually innocent," *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010), because he admitted under oath that he was factually guilty as charged, *see* DE 43 at 20–22.

10

Regarding the merits of Petitioner's claims, the court has carefully reviewed those claims and the record, and the court finds that the Petition fails to state claims upon which relief can be granted. "A defendant's solemn declarations in open court affirming a plea [] carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted) (cleaned up). Petitioner received a full Rule 11 colloquy and affirmed, under oath, that he had no issues with his representation in this case. DE 43 at 4–5. Those statements, made under oath, foreclose Petitioner's new claims that he received ineffective assistance from counsel, and the court sees no reason in the record to further question the quality of assistance Petitioner received from his attorney.

Accordingly, the United States' Motion is GRANTED, DE 54, and the Petition is DISMISSED, DE 50.

SO ORDERED this _____18th_____ day of May, 2026.

Richard E Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

11